## Beattie's Assigned Estate.

*Deeds—"Under and subject" to judgments—Liens—Judgments—Assigned estate—Distribution of proceeds of real estate.*

1. A deed conveying land "under and subject" to the payment of an encumbrance created by the grantor constitutes, only as between the grantor and the grantee themselves, a covenant of indemnity to the grantor on the part of the grantee, but the holder of the encumbrance acquires neither right nor remedy under the deed.

2. Where a person conveys land "under and subject" to judgments which are at the time liens upon the land, and thereafter the grantee makes an assignment for the benefit of creditors, and his real estate is sold, but the proceeds thereof are not sufficient to pay all the liens thereon, the judgments referred to in the deed cannot share in the distribution if it appears that they had not been revived and that their lien had been lost at the time of the sale.

Exceptions to report of auditor on distribution. C. P. Chester Co.

*Holding & Harvey,* for exceptions.

HAUSE, J., Jan. 17, 1922.—On Sept. 20, 1915, Mary K. Baldwin conveyed a tract of land to Thomas S. Beattie and Sarah M., his wife, as tenants by entireties. The wife later died and the title became absolute in the husband. Baldwin had acquired title in 1911 from George M. Chandler. At the date of the conveyance from Baldwin to Beattie, the land was encumbered by, among others, two judgment liens, created by Baldwin in favor of J. B. Swayne; the first for $168.68, entered Oct. 31, 1912, and the second for $102.57, entered Jan. 17, 1913. Neither of these liens has since been revived.

The conveyance referred to contains this clause: "Under and subject to the payment of two judgment notes held by J. B. Swayne and entered in the prothonotary's office against Mary K. Baldwin, &c." The consideration named

Beattie's Assigned Estate.

in the conveyance is "one dollar and other consideration," and then follows the "under and subject" clause quoted, and this clause includes, in addition to the two judgment liens referred to, two mortgage liens aggregating $3750, and a judgment lien of Pennock Brosius for $170. This latter lien was regularly revived. These various liens formed part of the purchase money for the land conveyed.

On Jan. 9, 1920, Beattie assigned his property for the benefit of his creditors. The real estate was sold and the fund, wholly the proceeds of realty, is here for distribution and is insufficient to pay all liens in full.

The auditor, appointed to make distribution, refused to allow the Swayne judgments to participate, and to his refusal the present exceptions were filed. Counsel concedes that these judgments are no longer liens, in so far as the Act of June 1, 1887, P. L. 289, is concerned, in view of the fact that they were not revived in the manner required by the act; but it is earnestly urged that the "under and subject" clause in the deed from Baldwin to Beattie "created" or fastened upon the land a new lien as of the date of the conveyance, which was existing when Beattie's assignee sold the land and of which Swayne may avail himself in the distribution.

That a grantor may, by apt expressions in his deed, "create" liens upon the land conveyed is a proposition well settled. Hence, the inquiry here is, what is the legal effect of a conveyance of land "under and subject to the payment" of liens then existing against it?

It is not pretended that Beattie, the grantee of Baldwin, by any "agreement in writing" expressly assumed any personal liability for Swayne's liens, nor are there any "express words in the deed" to the effect that the land was conveyed "on condition of the grantee assuming such personal liability," and, therefore, the grantor, Baldwin, has no personal undertaking arising out of the language of the deed that he can enforce against Beattie. Such is the situation declared by the Act of June 12, 1878, P. L. 205, with the further statutory declaration that "the use of the words 'under and subject' to the payment of such encumbrance shall not alone be so construed as to make such grantee personally liable" for the amount of the encumbrance. And even though, as between grantor and grantee, the language in the deed did create a personal responsibility to pay the amount secured, this could not avail the holder of the encumbrance, because he is no party to the covenant: Smith v. Danielson, 45 Pa. Superior Ct. 125; Tritten's Estate, 238 Pa. 555.

How, then, shall the clause be construed? This inquiry, it seems to us, has been answered by both our appellate courts. "A conveyance of land 'under and subject' to the payment of an encumbrance created by the grantor," said Judge Porter, speaking for the Superior Court, "constitutes only, as between themselves, a covenant of indemnity to the grantor on the part of the grantee:" Peters's Estate, 16 Pa. Superior Ct. 462. Stating the construction in somewhat different terms, the same judge said: "The words 'under and subject' in a conveyance import that the grantee takes the land subject to an encumbrance, the amount of which has been deducted from the agreed price (as was the case here), and the covenant to be inferred from it is that of indemnity for the protection of the grantor:" Aronson v. Heymann, 56 Pa. Superior Ct. 501. Had Swayne, therefore, after the conveyance by Baldwin to Beattie, proceeded to collect his liens and Baldwin had been required to personally pay them, or any part of them, to the extent of the payment, Beattie would have been responsible to Baldwin under the implied covenant in the deed, as was the grantee in Greenspan v. Margolis, 70 Pa. Superior Ct. 373.

1 D. & C.

Mr. Justice Sharswood, for the Supreme Court, in Moore's Appeal, 88 Pa. 450, thus interpreted a like provision: "They (the words 'under and subject') import that the vendee takes the land encumbered, and, at most, that so taking it at an agreed consideration which includes the encumbrance, he will indemnify the vendor to the extent of that consideration in the same manner as if it had been paid in cash and so applied at the time." To the same effect are May's Estate, 218 Pa. 64, and Faulkner v. McHenry, 235 Pa. 298.

It is evident from these interpretations that the holder of the encumbrance acquires neither right nor remedy under them. He is not a party to the conveyance, and the undertaking arises only by implication for the benefit and protection of the grantor, so that he may compel his grantee to do what he agreed to do—pay the encumbrances—because they represent part of the purchase money which he would otherwise have been entitled to receive in cash.

If Baldwin had conveyed to Beattie "under and subject" to the payment to the former of the whole or a portion of the purchase money, an entirely different question would be presented. The grantee, in that event, would take title, not subject to the payment of liens already created and in existence at the time of conveyance, but upon *condition* that he pay the purchase money to his grantor. If he defaulted, the grantor could enforce payment by equitable ejectment: Eichelberger v. Gitt, 104 Pa. 64. In Schnyder v. Orr, 149 Pa. 320, a grantor was permitted to recover in ejectment against his grantee where the conveyance was made "subject to" certain existing judgment liens and the grantee failed to pay them. Referring to the clause in the deed, the court below said: "This clause created a lien upon the premises conveyed, and the grantee took the estate conditioned for the payment of these liens and the performance of the condition could be enforced by ejectment." The judgment in favor of the grantor was affirmed, on appeal, without comment. That the conclusion reached by the court below was correct, in view of the previous decision in Eichelberger v. Gitt, 104 Pa. 64, there can be no doubt. The conveyance had been made in legal effect "conditioned" upon the payment of the existing judgment liens, but we are aware of no authority for the statement quoted that the clause referred to "created a lien upon the premises." At most, it could not have resulted in a lien in favor of any one other than the grantor and enforceable only by him.

Our attention is called to the case of Kensinger v. Smith, 94 Pa. 384, as authority for exceptant's contention that the clause in the deed here under consideration created an equitable lien enforceable by ejectment by a party who furnished a portion of the purchase money and secured it by a judgment lien against the land conveyed, where the grantee had later conveyed to a third person. On the general proposition that a person lending money to a grantee with which to pay for the land purchased can recover in ejectment if the grantee fail to repay, that case is not, as we read it, supported by principle or by any subsequent case, important as the question involved is. It presents the anomaly of permitting a person who never had title to the land, and who never contracted to obtain title, to acquire the land in an action of ejectment because the grantee, to whom he had made a loan to assist in the purchase, failed to repay when the loan fell due. If, however, the conclusion announced in that case be a correct statement of the law, it can have no application here, because Swayne furnished no part of the purchase money for Beattie at the time he purchased from Baldwin. He, Swayne, was then the holder of two liens against Baldwin's land, which liens in their origin had no connection with the acquisition of title by Baldwin. They were taken

into account, however, when Beattie acquired title, and then only as a present figurative payment of purchase money by Beattie to Baldwin, with, as the cases say, "a covenant of indemnity for the protection" of Baldwin, not for the protection of Swayne, the lien holder. Swayne was no party to the transaction; no promise was made by Beattie to him to pay the liens, and the clause in the deed gives him no remedy, legal or equitable.

We conclude, therefore, that Swayne has no claim upon the fund for distribution in preference to lien holders whose liens had been properly revived.

The exceptions to the report of the auditor are dismissed, the report is confirmed, and distribution is directed in accordance with the schedule attached to his report.

From Truman D. Wade, West Chester, Pa.